**UNSEALED**

2/10/15 DR

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

United States District Court
Southern District of Texas
FILED

FEB 04 2015

David J. Bradley, Clerk

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | Criminal No. **M-15-150** |
| SUSANA MUNGUIA | § | |
| LUBINA PEDRAZA | § | |

### SEALED INDICTMENT

**THE GRAND JURY CHARGES:**

### Background

1. The United States Department of Housing and Urban Development (HUD) is a federal agency whose central mission is to make quality, affordable housing accessible to all United States citizens. In carrying out its mission, HUD oversees and funds a number of programs designed to provide affordable housing for low-income United States citizens. One such program is known as the Housing Choice Voucher Program.

2. The Housing Choice Voucher Program, also commonly referred to as Section 8 housing, is a rent subsidy program that assists low income families to obtain decent, safe, and sanitary housing in the private market.

3. If an eligible beneficiary receives a Section 8 voucher for subsidized housing assistance under the Housing Choice Voucher Program, HUD pays rent subsidies to the property owners/landlords. The rent subsidy, also known as Housing Assistance Payments (HAP), comprises the difference between what the tenant can pay based on income and other factors and the contract rent established for that geographical area. Public Housing Authorities

(PHAs) administer this program for a fee for HUD. The PHA is responsible for paying the landlord/owner the HAP for a particular Section 8 tenant.

4. The City of Hidalgo Housing Authority (CHHA) is an agency or other instrumentality of the city of Hidalgo, Texas, created pursuant the Municipal Housing Law with the power to construct, maintain, operate and manage any housing project or affordable housing programs on behalf of the city. The CHHA administers the Section 8 program on behalf of HUD in Hidalgo, Texas. The CHHA operates under the direction of HUD and CHHA Board, appointed by the Mayor of Hidalgo. On average, the CHHA receives approximately $260,000 dollars in Section 8 funds annually from HUD. The CHHA does not receive any other programmatic income from HUD and has no additional outside revenue.

5. Under the Housing Choice Voucher Program, CHHA maintains a waiting list of eligible applicants; maintains information that permits CHHA to select participants from the waiting list in accordance with CHHA admission policies; conducts credit and background checks of applicants; reviews applications; certifies program eligibility of applicants; selects applicants in accordance to admission policies; inspects and certifies that housing units met Housing Quality Standards and approves units for leasing and contracts; determines the amount of Housing Assistance Payments to landlords on behalf of families, and makes such payments; conducts annual recertifications for continued eligibility for participants; and monitors program performance and compliance of landlords and families.

## Individuals Involved

6. At all times material to this investigation, **SUSANA MUNGUIA (MUNGUIA)**, was a public official, namely the CHHA Executive Director, who influenced decisions with respect to the Section 8 program. **MUNGUIA** was employed at the CHHA as the executive director from 1990 through May of 2014. As the Executive Director for the CHHA, **MUNGUIA's** responsibilities included the processing and signing of the HAP checks to the various Section 8 owners/landlords, and providing approval of requests for rent subsidies or HAP checks to the various owners/landlords pursuant to the Housing Choice Voucher Program.

7. At all times material to this investigation, **LUBINA PEDRAZA (PEDRAZA)**, was a public official, namely the CHHA Secretary, who influenced decisions with respect to the Section 8 program. **PEDRAZA** was employed through the city of Hidalgo, Texas as the CHHA Secretary from approximately 2005 through May of 2014. As the Secretary for the CHHA, **PEDRAZA's** responsibilities included the processing of the HAP checks to the various Section 8 owners/landlords; overseeing the day-to-day operation of the Housing Choice Voucher Program; processing tenant applications; conducting the certifications of tenants and owners/landlords; assisting tenants; and conducting inspections on housing units pursuant to the Housing Choice Voucher Program.

## Count One

From on or about July 2011 to on or around May 7, 2014, in the Southern District of Texas and within the jurisdiction of the Court, the defendants,

**SUSANA MUNGUIA**
**and**
**LUBINA PEDRAZA**

unlawfully, knowingly, and intentionally combined, conspired, confederated, and agreed with one another and with others known and unknown to the Grand Jury to commit an offense against the United States, to wit,

(a) being a public official, did directly or indirectly, corruptly demand, seek, receive, accept, or agree to receive or accept anything of value personally or for any other person or entity, in return for being influenced in the performance of any official act, contrary to Title 18, United States Code, Section 201(b)(2)(A); and

(b) did embezzle, steal, obtain by fraud, or otherwise convert to the use of any person other than the rightful owner or intentionally misapplied checks in excess of five thousand dollars ($5000) from funds from the United States Department of Housing and Urban Development Housing Choice Voucher Program, contrary to Title 18, United States Code, Section 666(a)(1)(A).

### Manner and Means

The manner and means by which the defendants, **MUNGUIA** and **PEDRAZA**, sought to accomplish the objectives of the conspiracy included, among other things the following:

8. At all times during the bribery conspiracy, **MUNGUIA** and **PEDRAZA** were public officials pursuant to Title 18, United States Code, Section 201(a)(1), in that they were agents of CHHA with official responsibility for carrying out a federal program or policy, namely the Section 8 program on behalf of HUD.

9. Certain co-conspirators paid, directly or through a third party, a monetary bribe to **MUNGUIA** and **PEDRAZA** in order to bypass the Section 8 waitlist system and to receive immediate approval to obtain vouchers for housing subsidies under the Voucher Program.

10. After **MUNGUIA** and **PEDRAZA** received the monetary bribe, the paying party or the person for whom payment was made, did immediately receive subsidized housing through **MUNGUIA** and **PEDRAZA** who assigned housing to the payee or beneficiary, and issued HAP checks to subsidize the rent payment owed by the payee or beneficiary.

11. It was part of the embezzlement conspiracy that **MUNGUIA** and **PEDRAZA** did embezzle, steal, obtain by fraud, or otherwise convert to their use rent subsidies under the HUD Housing Choice Voucher Program.

12. Between July 2013 and May 2014, **MUNGUIA** and **PEDRZA** engaged in a scheme to steal funds from the CHHA, including funds received through the federal program described above, through the issuance of false and fraudulent checks for Section 8 housing assistance.

13. Each month during that time period, **PEDRAZA** was responsible for the processing of rent subsidies to various landlords/owners. When preparing the legitimate checks to pay the subsidies, **PEDRAZA** did cause multiple false and fraudulent check requests to be issued based on a falsified need for a monthly HAP to a particular owner/landlord. These fraudulent checks were made out to owners/landlords who either did not own or maintain a rental property, and/or the property was not occupied by a Section 8 tenant. **MUNGUIA** was responsible for the verification of the payment and the authorizing signature on the check.

14. After the fraudulent checks were issued and signed by **MUNGUIA**, **PEDRAZA** would then cash the fraudulent checks at Casa de Cambio, or deposit the check at a BBVA Compass Bank and subsequently withdraw the money. The cash proceeds from the fraudulent checks were shared by **PEDRAZA** and **MUNGUIA**.

## Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more

of the defendants or conspirators, both indicted and unindicted, committed, among others, the following overt acts in the Southern District of Texas:

15. On or about July 2011, I.D. did pay a sum of United States currency, namely approximately eight hundred dollars ($800.00) to **MUNGUIA** with the intent to influence **MUNGUIA** and **PEDRAZA** in their official capacity in order to obtain subsidized housing under the Section 8 Voucher program.

16. On or about July 2011, **MUNGUIA** and **PEDRAZA** did jointly accept approximately eight hundred dollars ($800.00) in United States currency from I.D. in exchange for the performance of an official act, namely that **MUNGUIA** and **PEDRAZA** would permit I.D. to bypass the Section 8 wait list system and would provide approval for I.D.'s receipt of vouchers for housing subsidies under the Voucher Program.

17. On or about January 2013, E.V.C.O. did pay a sum of United States currency, namely approximately eight hundred dollars ($800.00) to **MUNGUIA** and **PEDRAZA** with the intent to influence **MUNGUIA** and **PEDRAZA** in their official capacity in order to obtain subsidized housing under the Section 8 Voucher program.

18. On or about January 2013, **MUNGUIA** and **PEDRAZA** did jointly accept approximately eight hundred dollars ($800.00) in United States currency from E.V.C.O. in exchange for the performance of an official act, namely that **MUNGUIA** and **PEDRAZA** would permit E.V.C.O. to bypass the Section 8 wait list system and would provide approval for E.V.C.O.'s receipt of vouchers for housing subsidies under the Voucher Program.

19. On or about July 2013, B.V.C. did pay a sum of United States currency, namely approximately one thousand three hundred dollars ($1300.00) to E.V.C.O. with the intent to influence

MUNGUIA and **PEDRAZA** in their official capacity in order to obtain subsidized housing for J.J.S. under the Section 8 Voucher program.

20. On or about July 2013, at the time of the payment, **MUNGUIA** and **PEDRAZA** did jointly accept approximately one thousand three hundred dollars ($1300.00) in United States currency from E.V.C.O. in exchange for the performance of an official act, namely that **MUNGUIA** and **PEDRAZA** would permit J.J.S. to bypass the Section 8 wait list system and would provide approval for J.J.S.'s receipt of vouchers for housing subsidies under the Voucher Program.

21. On or about August 2013, S.D.C. did pay a sum of United States currency, namely approximately one thousand three hundred dollars ($1300.00) to E.V.C.O. with the intent to influence **MUNGUIA** and **PEDRAZA** in their official capacity in order to obtain subsidized housing under the Section 8 Voucher program.

22. On or about August 2013, at the time of the payment, **MUNGUIA** and **PEDRAZA** did jointly accept approximately one thousand three hundred dollars ($1300.00) in United States currency from E.V.O.C. in exchange for the performance of an official act, namely that **MUNGUIA** and **PEDRAZA** would permit S.D.C. to bypass the Section 8 wait list system and would provide approval for S.D.C.'s receipt of vouchers for housing subsidies under the Voucher Program.

23. On or about September 2013, E.R. did pay a sum of United States currency, namely approximately one thousand two hundred dollars ($1200.00) to E.V.C.O. with the intent to influence **MUNGUIA** and **PEDRAZA** in their official capacity in order to obtain subsidized housing under the Section 8 Voucher program.

24. On or about September 2013, at the time of the payment, **MUNGUIA** and **PEDRAZA** did jointly accept one thousand two hundred dollars ($1200.00) in United States currency from E.V.C.O. in exchange for the performance of an official act, namely that **MUNGUIA** and

    **PEDRAZA** would permit E.R. to bypass the Section 8 wait list system and would provide approval for E.R.'s receipt of vouchers for housing subsidies under the Voucher Program.

25. On or about November 2013, A.P.P. did pay a sum of United States currency, namely approximately one thousand two hundred and fifty dollars ($1250.00) to **PEDRAZA** with the intent to influence **MUNGUIA** and **PEDRAZA** in their official capacity in order to obtain subsidized housing under the Section 8 Voucher program.

26. On or about November 2013, **PEDRAZA** then shared the United States currency, namely approximately one thousand two hundred and fifty dollars ($1250.00), between herself and **MUNGUIA**.

27. On or about November 2013, at the time of the payment, **MUNGUIA** and **PEDRAZA** did jointly accept approximately one thousand two hundred and fifty dollars ($1250.00) in United States currency from A.P.P. in exchange for the performance of an official act, namely that **MUNGUIA** and **PEDRAZA** would permit A.P.P. to bypass the Section 8 wait list system and would provide approval for A.P.P.'s receipt of vouchers for housing subsidies under the Voucher Program.

28. On or about December 2013, L.V. did pay a sum of United States currency, namely approximately eight hundred dollars ($800.00) to **MUNGUIA** with the intent to influence **MUNGUIA** and **PEDRAZA** in their official capacity in order to obtain subsidized housing under the Section 8 Voucher program.

29. On or about December 2013, **MUNGUIA** then shared the United States currency, namely approximately eight hundred dollars ($800.00) between herself and **MUNGUIA**.

30. On or about December 2013, at the time of the payment, **MUNGUIA** and **PEDRAZA** did jointly accept approximately eight hundred dollars ($800.00) in United States currency from

L.V. in exchange for the performance of an official act, namely that **MUNGUIA** and **PEDRAZA** would permit L.V. to bypass the Section 8 wait list system and would provide approval for L.V.'s receipt of vouchers for housing subsidies under the Voucher Program.

31. On or about the date stated below, **PEDRAZA** did cause to have issued fraudulent checks detailed below to the stated payees while knowing these landlords/owners did not have Section 8 tenants. On said dates, **MUNGUIA** did verify, authorize, and sign the fraudulent checks. **PEDRAZA** did thereafter cash the fraudulent check and share the proceeds with **MUNGIA**.

| Paragraph | Payee | Check Date | Check No. | Amount |
|---|---|---|---|---|
| 32 | Raymundo Arevalo | 7/1/2013 | 15796 | $600.00 |
| 33 | James M. Wisdom | 8/1/2013 | 15859 | $650.00 |
| 34 | Anabel Palacios | 8/1/2013 | 15855 | $597.00 |
| 35 | James M. Wisdom | 9/1/2013 | 15913 | $650.00 |
| 36 | James M. Wisdom | 10/1/2013 | 15985 | $650.00 |
| 37 | James M. Wisdom | 11/1/2013 | 16051 | $650.00 |
| 38 | James M. Wisdom | 12/1/2013 | 16086 | $650.00 |
| 39 | James M. Wisdom | 1/1/2014 | 16151 | $650.00 |
| 40 | James M. Wisdom | 2/1/2014 | 16221 | $650.00 |
| 41 | James M. Wisdom | 3/1/2014 | 16374 | $650.00 |
| 42 | James M. Wisdom | 4/1/2014 | 16436 | $650.00 |

All done in violation of Title 18, United States Code, Section 371.

### Counts 2-8

The grand jury hereby realleges and reincorporates the allegations contained in paragraphs 1 through 7, *supra*, as though fully set forth herein.

On or about the date stated below, in the Southern District of Texas and within the jurisdiction of the Court, the defendants,

SUSANA MUNGUIA
and
LUBINA PEDRAZA

being public officials or persons selected to be a public official, did directly or indirectly, corruptly demand, seek, receive, accept, or agree to receive or accept anything of value personally or for any other person or entity, in return for being influenced in the performance of any official act; that is, the defendants solicited and accepted an approximate value of United States currency from payee, as listed below, in exchange for an individual beneficiary being allowed to bypass the Section 8 wait list system and provided with housing assistance through the United States Department of Housing and Urban Development Housing Choice Voucher Program.

| Count | Date | Payee | Beneficiary | Amount |
|---|---|---|---|---|
| 2 | July 2011 | I.D. | I.D. | $800.00 |
| 3 | January 2013 | E.V.C.O. | E.V.C.O. | $800.00 |
| 4 | July 2013 | B.V.C. | J.J.S. | $1,300.00 |
| 5 | August 2013 | S.D.C. | S.D.C. | $1,300.00 |
| 6 | September 2013 | E.R. | E.R. | $1,200.00 |
| 7 | November 2013 | A.P.P. | A.P.P. | $1,250.00 |
| 8 | December 2013 | L.V. | L.V. | $800.00 |

All in violation of Title 18, United States Code, Section 201(b)(2)(A) and Title 18, United States Code, Section 2.

### Notice of Forfeiture

Upon conviction of any or all of the counts of this Indictment, the defendants,

SUSANA MUNGUIA
and
LUBINA PEDRAZA

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 981(a)(1)(D)(i), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including,

but not limited to, a money judgment, jointly and severally against each defendant, in the amount of $14,497.00 (fourteen thousand, four hundred ninety-seven United States dollars), which amount represents proceeds of the offense(s).

If any of the property described above, as a result of any act or omission of the defendant(s):

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been comingled with other property which cannot by divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 United States Code, Sections 981(a)(1)(C) and 981(a)(1)(D)(i), and 28 United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

KENNETH MAGIDSON
UNITED STATES ATTORNEY

_____
Assistant United States Attorney